COMMONWEALTH OF MASSACHUSETTS
UNITED STATES DISTRICT COURT

CIVIL ACTION NO.: 04-11800DPW

ADAM HELFAND, CARON HELFAND, )
AND MITCHELL HELFAND, )
                Plaintiffs )
)
v. )
)
THE JOHN DEWEY ACADEMY, INC., )
THOMAS BRATTER, CAROLE BRATTER )
KEN STEINER, AND GWENDOLYN )
HAMPTON, )
                Defendants )
)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTION TO QUASH SUBPOENAS DUCES TECUM FOR RECORDS HELD BY THE MIDDLESEX AND BERKSHIRE DISTRICT ATTORNEYS' OFFICES

The Plaintiffs submit this Memorandum of Law in Opposition to the Defendants' Motion to Quash Subpoenas Duces Tecum for records held by the Middlesex and Berkshire District Attorneys' offices.

## FACTS

Defendant, John Dewey Academy ("JDA") is a small residential school for troubled teenagers. Many students have substance abuse problems, and a history of behavioral and academic difficulties. The school has a varying student population of between fifteen and thirty students. Each student attends classes, meets individually with a mental health counselor, called a "primary clinician," and participates in group therapy. Many students also have work assignments at the school. Upon enrollment, each student is assigned a primary clinician who conducts the student's individual therapy, acts as the student's academic and personal advisor, and has primary influence over the student's advancement and/or discipline at JDA.

1

Plaintiff Adam Helfand ("Helfand") enrolled at JDA in the summer of 1999 when he was seventeen (17) years old. In November 1999, JDA assigned Defendant Hampton to be Helfand's "primary clinician." She had regular individual counseling sessions with Helfand, acted as liaison between Helfand and other staff, and exerted primary influence in all decisions involving Helfand's discipline or advancement at JDA. Defendant Hampton also taught Helfand Spanish and supervised his work in the school kitchen. In the spring of 2000, Defendant Hampton began a sexual relationship with Helfand. The relationship continued throughout the remainder of Helfand's time at JDA, and resulted in the birth of a child on June 15, 2002. This child was ultimately placed for adoption. Defendant Hampton also provided Helfand with alcohol, which she consumed with him, and she encouraged his use of illegal drugs.

As the founder and president of JDA, Defendant Thomas Bratter ("Bratter") had ultimate responsibility for and played an active role in all operations of JDA, including hiring, supervision of staff and students, curriculum and therapy. [See Exhibit 1, JDA's Answers to Interrogatories, Answer Nos. 2, 5, 7.] As such, he was ultimately responsible for the promotion of Defendant Gwendolyn Hampton ("Hampton"), formerly a Spanish teacher and houseparent at the school, to the position of primary clinician. He was also ultimately responsible for supervising her work in all areas.

On September 16, 1993, Defendant Bratter was arrested for two counts of sexual assault in Connecticut, where he lives. [See Exhibit 2, Connecticut Superior Court documents.] The conduct allegedly took place between March 24, 1993 and June 2, 1993. Id. On September 30, 1993, Defendant Bratter was indicted in Middlesex Superior Court, MICR1993-01559, for rape and indecent assault and battery on a person fourteen years or over. On information and belief, this case contained evidence obtained from a wiretap,

2

and involved some conduct that took place in New Jersey. [See Exhibit 3, Middlesex Superior Court docket materials in MICR 1993-01559.]

On June 6, 1995, in the Connecticut case, Defendant Bratter pleaded *nolo contendere* to one count of unlawful restraint in the second degree, and received a sentence of one year in jail, suspended for three years, during which he was ordered to donate $50,000 to designated charities, and complete five hundred hours of community service. [See Exhibit 2.]

On April 18, 1996, Kenneth Oleckna filed a civil lawsuit against Defendant Bratter in Middlesex Superior Court, MICV1996-02297. [See Exhibit 4]. That complaint alleged that Defendant Bratter engaged in a sexual relationship with the Plaintiff's daughter ("Victim 1"), a JDA student at the time, under the guise of discharging his educational duties, despite "[her] level of maturity, and the vulnerability caused by her emotional problems." Id. The Complaint alleged that Defendant Bratter "negligently failed to maintain the appropriate boundaries between himself and [Victim 1]." Id. Specifically, the Complaint alleged that Defendant Bratter engaged Victim 1 in sexual relations in Newton, Massachusetts on April 17, 1993, while staying at a hotel during a visit to Boston College, which she was considering attending. Id. Defendant Bratter had also allegedly engaged Victim 1 in sexual acts in Connecticut, where he lived. Id. The student disclosed the Newton events in August, 1993. On August 8, 1993, the Complaint further alleged, pursuant to a lawful order of the New Jersey courts, where Victim 1 lived, Defendant Bratter acknowledged the sexual nature of his relationship with the student in a tape recorded conversation with her. Id.

On February 28, 1997, a Middlesex County Grand Jury again indicted Defendant Bratter in MICR1997-00405, on three counts of rape and two counts of indecent assault and battery on a person aged fourteen years or older. On March 13, 1997, the

3

Commonwealth entered a *nolle prosequi* on both counts of indictment MICR1993-01559. [See Exhibit 3]. On January 5, 1998, the court granted Defendant Bratter's motion to dismiss the 1997 indictments without prejudice. [See Exhibit 5, Middlesex Superior Court docket materials in MICR1997-00405.] On August 23, 2000, the civil suit involving Victim 1 was resolved by way of a settlement, and a stipulation of dismissal with prejudice was filed. [See Exhibit 6, docket materials in MICV1996-02297.] Based on a review of the publicly available documents, the Connecticut and Middlesex criminal cases all appear to involve Victim 1.[1]

On August 3, 1999, Defendant Bratter was charged in Great Barrington District Court, docket no 9929CR0656, with indecent assault and battery on a person over the age of fourteen. [See Exhibit 7, docket materials in 9929CR0656.] On June 25, 2002, Defendant Bratter admitted to sufficient facts to find him guilty of simple assault and battery and received a sentence of nearly one year probation. A condition of Defendant Bratter's probation was to have "no unsupervised contact with young women 18 or under." Id. The Complainant in this case ("Victim 2") was also a student at JDA at the time of the offense, according to discovery responses received from the Defendants, which also disclosed her name.

Following the filing of the Complaint in the above-captioned matter in August, 2004, The Boston Globe and The Berkshire Eagle published several in-depth articles regarding the allegations. [See Exhibit 8].

On August 5, 2005, the Plaintiffs issued two subpoenas duces tecum for records of the Middlesex and Berkshire District Attorneys offices related to Defendant Thomas Bratter. The subpoena to the Middlesex District Attorney's office sought "[a]ll records,

---

[1] Victim 1's true name, while redacted in Exhibit 4, is known to the Plaintiff, because it is contained in the publicly available Civil Complaint and was disclosed in the Defendants' Answers

4

including police reports, supplemental police reports, complaints, indictments, grand jury minutes, 911 tapes, witness statements, booking sheets, arrest reports, pleadings, court orders, victim impact statements, taped conversations between the Defendant and the victim, and documents related to prior or subsequent bad acts of the Defendant related to Case Nos. MICR1997-00405 (disposed 1998), and MICR1993-01559 (disposed 1997) or any other criminal case involving Defendant Thomas Bratter, d.o.b. 5/18/39." The subpoena to the Berkshire District Attorney's office sought "[a]ll records, including initial police reports, supplemental police reports, 911 tapes, booking sheets, complaints, pleadings, victim impact statements, and witness statements, related to criminal case no. 9929CR0656 (disposed 2002), or any other criminal case involving Defendant Thomas Bratter, d.o.b. 5/18/39." The Middlesex and Berkshire District Attorney's offices objected to the production of these records pursuant to Fed. R. Civ. P. 45 (c) (2) (B). The Defendants then filed a Motion to Quash the subpoenas, arguing that, "The records sought serve no purpose other than to harass defendant Thomas Bratter. The records sought have no bearing on the claims or defenses at issue in this matter. Nor would they be admissible as evidence."

### ARGUMENT

I.  THE RECORDS SOUGHT FALL WITHIN THE PERMISSIBLE SCOPE OF DISCOVERY CONTEMPLATED BY FED. R. CIV. P. 26 (B) (1).

Defendant Bratter argues that the records sought would be inadmissible at trial. He does not, and cannot argue, that they do not otherwise fall within the scope of discoverable evidence. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26 (b) (1). Thus, whether or not they are admissible at trial, relevant

---

to Interrogatories.

documents are discoverable if they are reasonably calculated to lead to the discovery of admissible evidence.

In this case, among other things, the Plaintiff alleges that the Defendants knew or should have known that the relationship between Defendant Hampton and Plaintiff Adam Helfand was inappropriate, that they failed to properly supervise Defendant Hampton, failed to properly supervise Adam Helfand, failed to investigate the relationship further, failed to discipline Defendant Hampton, and failed to implement policies and procedures that would prevent such misconduct from occurring. By his own admission, Defendant Bratter had ultimate responsibility for supervising Defendant Hampton. [See Exhibit 1.] As founder and director of the school, and an active participant in its daily operations, Defendant Bratter was also its personification. Any allegation of sexual misconduct against him is likely to lead to the discovery of admissible evidence regarding his ability to supervise Defendant Hampton. Such allegations are also relevant to the standards and atmosphere of the school regarding appropriate boundaries between staff and students. Moreover, allegations of sexual misconduct against him by students, all of which took place prior to the beginning of Defendant Hampton's sexual relationship with the Plaintiff, should have placed the Defendants on notice of the importance of staff maintaining appropriate boundaries with students, and the importance of implementing procedures for the prevention of sexual misconduct between students and staff. The criminal cases against Defendant Bratter involved two different students at two distinctly different time periods, and charges in three different jurisdictions. The charges involving both students involved significant sanctions: the Berkshire County case involving Victim 2 resulted in a conviction and a prohibition against having unsupervised contact with women under the age of eighteen; the cases involving Victim 1 resulted in a one year suspended sentence in Connecticut,

6

with probation conditions, and a civil settlement. Records that provide details as to the specific allegations of each complaint, and Defendant Bratter's statements, will allow the Plaintiff to question Defendant Bratter and other staff of JDA about Bratter's ability to appropriately supervise Defendant Hampton, and about the standards and protocols in place regarding boundaries between staff and students. It will also allow the Plaintiff to investigate whether such allegations, and the manner in which Defendant Bratter communicated them, or did not communicate them, to other staff and/or members of the school's advisory board, should have provided adequate notice to the school to implement policies and procedures to prevent future sexual misconduct between staff and students. Thus, rather than an attempt merely to harass Defendant Bratter, the information sought by the Plaintiffs is directly relevant to some of the central claims in the Plaintiffs' case -- that is, whether or not the Defendants were negligent.

II.   THE INFORMATION SOUGHT IS NOT ENTITLED TO PROTECTION FROM DISCLOSURE UNDER ANY STATE OR FEDERAL LAW.

The District Attorneys claim that the records sought should not be disclosed because they are privileged or exempt from disclosure as investigatory and/or work product materials, because the materials contain Criminal Offender Record Information, medical records and information related to reports of sexual assault, and because of traditional concerns regarding grand jury secrecy. For the reasons stated below, the court should find that no exemption from public disclosure applies to the materials sought, that the public interest in disclosure outweighs cloture, and that any legitimate concerns for privacy can be accommodated by redacting identifying information from the materials.

A.  The records sought are not exempt from disclosure under the Massachusetts Public Records Act, G.L. c. 4 § 7, cl. 26 (c), (f)

The Plaintiff seeks police reports, supplemental police reports, booking sheets, arrest reports, grand jury minutes, and witness statements related to all of the criminal cases that have been brought against Defendant Bratter. The primary purpose of the public records inspection statute is to give the public broad access to governmental records. Worcester Telegram & Gazette Corp. v. Chief of Police of Worcester, 436 Mass. 378, 382-83 (2002). Whether the information requested is entitled to the exemption from release for investigatory materials must be determined on a case-by-case basis. WBZ-TV4 v. District Atty. for Suffolk Dist., 408 Mass. 595, 603 (1990); Rafuse v. Stryker, 61 Mass. App. Ct. 595, 597, *rev. denied*, 442 Mass. 1112 (2004). The custodian of those records bears the burden of overcoming the presumption favoring disclosure by proving with specificity that the protection applies. Id.; Globe Newspaper Co. v. Police Com'r of Boston, 419 Mass. 852, 857-58 (1995). The custodian of the records must prove that release of these records would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest. Id.; Further, the fact that some exempt material may be found in a document or report of an investigatory character does not justify cloture as to all of it. Id.; Reinstein v. Police Com'r of Boston, 378 Mass. 281, 290 (1979).

   1.  The exemption for disclosure of the investigative materials in this case does not apply, and release of the records furthers the public interest.

In this case, the District Attorneys have not articulated any specific prejudice that would result from disclosure of the particular records sought. [See Tab 2 of Defendants' Motion to Quash]. In any event, release of the investigative materials sought would not "so prejudice the possibility of effective law enforcement that such disclosure would not

8

be in the public interest." All of the criminal cases at issue have long been resolved, and some of the information sought — the names of the victims, and some of the general allegations -- is no longer confidential because of its disclosure in the civil lawsuit involving Victim 1, and in this case. See Rafuse, 61 Mass. App. Ct. at 599 (investigatory exemption did not apply to witnesses' statements given in murder investigation sought by mother in related wrongful death suit where there was no evidence that the investigation was ongoing or that disclosure would foreclose future criminal prosecution, crime occurred ten years previously, and some of the information sought was no longer confidential); Antell v. Attorney General, 52 Mass. App. Ct. 244, 248 (2001) (witness statements given in investigation of police misconduct were not protected from disclosure under investigatory materials exception to Public Records Act where investigations had concluded).[2] To the extent disclosure of information that would identify the complainants in these sexual assault cases would have a negative impact on the prosecution of sexual assault in general, the District Attorneys may redact identifying information of the complainants, as the Plaintiffs do not seek such information from the District Attorneys at this time.[3][4] See Antell, 52 Mass. App. Ct. at 248 (information gleaned from witness statements, subject to redaction of identifying information, would not have a chilling effect on witness testimony or jeopardize related criminal proceedings). Thus,

---

[2] To the extent the District Attorneys object to the subpoenas because of "traditional concerns for grand jury secrecy," such concern is misplaced where the Middlesex cases have long been disposed and where Mass. R. Crim. P. 5 permits disclosure of matters occurring before the grand jury "when directed to do so by the court." Mass. R. Crim. P. 5 and Reporter's Notes (Rev. 2004).

[3] The Defendants would have been aware of the Plaintiff's willingness to review redacted materials had they complied with Fed. R. Civ. P. Local Rule 7.1 and conferenced with Plaintiffs' counsel prior to the filing of the Motion to Quash.

[4] Such redaction will also address any concerns regarding victim privacy embodied by the Public Records Law, which exempts from disclosure any information regarding "specifically named individuals…which may constitute an unwarranted invasion of personal privacy," G.L. c. 4 § 7,

9

the concerns that exist in most cases involving subpoenas for investigatory materials simply do not exist in the case at bar.[5]

Disclosure of such materials in this case furthers a compelling public interest. The case involves allegations that a teacher and therapist at a private school for troubled teenagers engaged in a sexual relationship with a vulnerable student. The Boston Globe and The Berkshire Eagle's publication of in-depth articles about the allegations in the Complaint demonstrates the public's interest in the case and the subject matter. (See Exhibit 8.) Moreover, because JDA is a private school for troubled, vulnerable teenagers, but does not accept special needs students, and has a number of students over eighteen (the jurisdictional maximum for the Department of Social Services), the school's activities regarding many students are largely unregulated and unmonitored by any public agency. Thus, the public interest in disclosure of allegations of sexual misconduct between the Director of the school and students in the context of this case is even greater than in cases in which there is a public agency overseeing the school's operations.

2. Information regarding Defendant Bratter should not be protected from disclosure pursuant to G.L.c. 6 § 172 or G.L. c. 4 § 7, cl. 26 (c).

The Criminal Offender Record Information (CORI) statute operates as an exception to the definition of "public records" in the public records statute, and thus, its applicability as an exception to public disclosure must be construed narrowly. Globe Newspaper Co. v. District Attorney for Middle Dist., 439 Mass. 374, 383 (2003). In this case, the information sought is not prevented from disclosure as CORI material because,

---

cl. 26 (c), and the laws that specifically prevent disclosure of information related to sexual assault. See G.L. c. 41, § 97D; G.L. c. 265, § 24C; and G.L. c. 66, § 10.

[5] To the extent the District Attorney's claim a "work product" privilege as to any investigation materials, in Massachusetts, neither the courts nor the legislature has adopted a "deliberative process" privilege to public access to government records. Norfolk Dist. v. Flatley, 419 Mass. 507, 509-10 (1995). Nonetheless, the Plaintiffs do not seek any materials which disclose the

as discussed above, "the public interest in disseminating such information to [the plaintiffs] clearly outweighs the interest in security and privacy of the defendant." G.L. c. 6, § 172. Disclosure of the materials would not constitute an "unwarranted invasion of personal privacy" pursuant to G.L.c. 4, §7, cl. 26(c). The application of the privacy exemption requires a balancing between any claimed invasion of privacy and the interest of the public in disclosure. Globe Newspaper Co. v. Police Com'r of Boston, 419 Mass. at 858. As discussed above, the public has a compelling interest in disclosure of this material. See Antell v. Attorney General, 52 Mass. App. Ct. at 248 (documents relating to investigation of police officers were not protected from disclosure under privacy exception to Public Records Act where public interest in allegations of official misconduct outweighed privacy interests of participants in closed investigation). Defendant Bratter is the founder, director and personification of JDA. For the families of present and future JDA students who place their trust in him and his school, he is a figure of enormous importance, and his conduct merits public scrutiny, much like that of a public official. Moreover, the underlying facts contained in the District Attorneys files all resulted in some form of culpability for Defendant Bratter, whether in criminal or civil court.

    B.    <u>The Materials Sought Should Not Be Prevented from Disclosure Pursuant to Medical Records Laws Because the Plaintiffs Seek Limited, if any, Medical Records.</u>

The District Attorneys object to the subpoenas to the extent they seek medical records, which the District Attorneys are not permitted to disclose, relying on the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 29 U.S.C. § 1181 et seq.; and G.L. c. 111, §§70, 70E. The Plaintiffs do not seek any medical records, however, except to the extent such records contain statements of witnesses, including Defendant

---

"deliberative, predecisional process leading to an agency decision." N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 150-51 (1975).

11

Bratter or the complainants that relate to the crimes for which Defendant Bratter was charged in Massachusetts and Connecticut. All information in such records other than statements describing the facts of the crimes charged may be redacted.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the court deny Defendant Bratter's Motion to Quash Subpoenas Duces Tecum to the Berkshire and Middlesex District Attorneys. The Plaintiffs further request that the court order the District Attorneys to release the requested materials after redacting identifying information of the complainants and all medical records except to the extent they contain statements of witnesses related to the crimes charged.

                                                  Respectfully submitted,
The Plaintiffs,
Adam Helfand, Caron Helfand, and Mitchell Helfand,
By their attorneys,

/s/ Djuna E. Perkins
Laurence E. Hardoon, B.B.O. No.: 221360
Djuna E. Perkins, B.B.O. No.: 561909
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza, 12th Floor
Boston, MA 02116
(617) 880-7100

Dated: September 28, 2005