UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ADAM HELFAND, CARON HELFAND, )
AND MITCHELL HELFAND, )
)
) C.A. No. 04-11800-DPW
v. )
)
THE JOHN DEWEY ACADEMY, INC., )
THOMAS BRATTER, CAROLE )
BRATTER, KEN STEINER, AND )
GWENDOLYN HAMPTON, )
)

### ANSWERS OF THE DEFENDANT JOHN DEWEY ACADEMY, INC. TO PLAINTIFF'S INTERROGATORIES

**INTERROGATORY NO. 1:**

Please identify the person providing information responsive to these interrogatories, including his or her title.

**ANSWER NO. 1**

In addition to counsel, the following persons provided information responsive to these interrogatories: Thomas Bratter, President, John Dewey Academy; Carole Bratter, Vice-President, John Dewey Academy; Kenneth Steiner, John Dewey Academy.

**INTERROGATORY NO. 2:**

Please provide the following information for each supervisor of Defendant Hampton during the period of her employment at JDA:

    a.    Identity, including name and current or last known address;
    b.    The dates each was responsible for the supervision of Defendant Hampton; and
    c.    The aspect of Defendant Hampton's work supervised by each.

**ANSWER NO. 2**

The following persons, with current or last known contact information provided, supervised Ms. Hampton as follows:

Dr. Thomas Bratter, John Dewey Academy, 389 Main St., Great Barrington, MA 01230 had overall supervisory responsibilities at John Dewey in his capacity as the President of John Dewey Academy during Ms. Hampton's tenure at the school.

Dr. Ken Steiner, John Dewey Academy, 389 Main Street, Great Barrington, MA 01230 initially supervised Ms. Hampton's work as a Spanish teacher at the school, in his capacity as Dean of Studies. Since becoming Dean of John Dewey Academy, Mr. Steiner's role encompassed both supervision of Ms. Hampton's work as a teacher and her role as a clinician.

Dr. Henry Radda, former Dean of Students and later Dean of John Dewey Academy (August, 1985 - March, 1994) had general supervisory responsibilities that encompassed supervision of Ms. Hampton's work as a teacher. Last known contact: 1705 E. Aloe Drive., Fountain Hills, AZ, 85263, (602-837-6346).

Dr. Carol Maxym, former Dean of Students, John Dewey Academy (August, 1992 -October, 1997) had general supervisory responsibilities that encompassed supervision of Ms. Hampton's role as a house parent. Additionally, Ms. Maxym led the school's Women's Group, in which Ms. Hampton participated as a staff person and community member. Last known contact: 603 Martingale Lane, Arnold, MD 21012, (410)-432-6100.

Dr. Anne Benson, former Dean of Students, John Dewey Academy (January, 1998 -October, 2000) had general supervisory responsibilities that encompassed supervision of Ms. Hampton's role as a house parent, as a clinician, and as a leader of the school's Women's Group. Last known contact: 89 Birch Hill Road., Great Barrington, MA 01230, (413-528-5692).

Ms. Kathy Blackburn, former Dean of Students, John Dewey Academy (November, 2002 - July, 2004) had general supervisory responsibilities that encompassed supervision of Ms. Hampton's role as a clinician and as a leader of the school's Women's Group. Last known contact: 135 Bridge Street, Shelburne Falls, MA 01370, (413-625-8118).

Dr. Adriana Keseru, former Head of Language Department, John Dewey Academy (September, 1989 - June, 2002) supervised Ms. Hampton's work as a Spanish teacher. Last known contact: 210 Division Street, Great Barrington, MA, (413-529-9425).

Dr. Michael Gould, Head of Language Department, John Dewey Academy, 389 Main Street, Great Barrington, MA 01230 (September, 2002 - present) supervised Ms. Hampton's work as a Spanish teacher.

**INTERROGATORY NO. 3:**

Describe in detail all JDA policies, procedures, and protocols, regarding driving of school vehicles by students during the period of Adam Helfand's attendance.

## ANSWER NO. 3

JDA senior students, at least 18 years old and holding a valid driver's license, could, upon request and approval of the faculty, take a driving test administered by JDA's Building Superintendent or other administrative staff member. If the student demonstrated sufficient maturity, responsibility and commitment to the school's program to have reached senior status and had passed their driving test, he/she was designated by JDA as a student driver. Student drivers were allowed to drive school vehicles or their own personal vehicle on school business.

Student drivers, except in an emergency, were required to obtain permission from a JDA staff member before driving a school vehicle. Once permission was granted, the student driver was required to sign out in the JDA sign-out book, indicating their departure time and destination and to sign in upon return to the school.

Any student driver who had been grounded for disciplinary infractions would lose their driver status.

## INTERROGATORY NO.4:

Describe in detail all JDA policies, procedures, and protocols, regarding student performance of personal errands and chores for staff during the period of Adam Helfand's attendance.

## ANSWER NO. 4

During the period of Adam Helfand's attendance, JDA did not have a written policy or procedure with respect to this issue. However, JDA was aware that, from time to time, staff asked students to perform chores, including baby-sitting, lawn-mowing, and furniture moving. Staff members were encouraged, to the extent that they asked students to perform errands or chores for the staff, to compensate the students for any chores or errands that the students performed by providing a meal, money or maintenance hours credits.

## INTERROGATORY NO.5:

Describe in detail all JDA policies, procedures, and protocols, regarding the qualifications and hiring of clinical staff of JDA prior to and during the period of Adam Helfand's attendance.

## ANSWER NO. 5

During the time period referenced, JDA did not have a written policy regarding the qualifications and hiring of clinical staff. In practice, JDA required that clinical staff were college graduates, and that they either had advanced academic degrees, had experience working with the JDA population, were people who were in recovery from abuse or addiction or had some combination of these factors. Ordinarily, persons considered for

clinical staff positions would be interviewed by Thomas Bratter, the clinical staff, faculty members and JDA students.

**INTERROGATORY NO. 6:**

Describe in detail the process by which Defendant Hampton was hired by JDA, including the position(s) for she was initially hired, and the identities, including current or last known addresses, of all individuals who participated in the decision to hire her.

**ANSWER NO. 6**

Defendant Hampton was initially hired as a part-time Spanish teacher at JDA in late summer, 1992, following interviews by Thomas Bratter, Ken Steiner and Adriana Keseru, who directed JDA Foreign Language studies at that time.

**INTERROGATORY NO.7:**

Describe in detail the process by which Defendant Hampton was promoted or assigned to any other positions at JDA after her initial hiring, including the position to which she was promoted or assigned and the identities, including current or last known addresses, of all those who participated in the decision to promote or assign her.

**ANSWER NO. 7**

Beginning in April, 1994, following Ms. Hampton's request to work as a house parent at JDA, the school employed her as a house parent in addition to her Spanish teaching position. Later, in 1996, at the suggestion of Ken Steiner and with the approval of Carole Bratter, Ms. Hampton was given the added responsibility for supervising the students' kitchen work in addition to her teaching and house parent duties. In 1997, Hampton was considered for a job as a primary clinician at the school, upon an opening, because she demonstrated a strong aptitude for working with JDA students, was a person in recovery and had begun work toward a Master's Degree. She was interviewed, as described in Answer No. 5, for that position before taking on its responsibilities.

Thomas Bratter and Ken Steiner participated in her assignment to house parent duties and kitchen responsibilities. Messrs. Bratter and Steiner, together with Anne Benson, participated in the decision to have Ms. Hampton become a primary clinician at the school

**INTERROGATORY NO. 8:**

Describe in detail the responsibilities of the house parents during the period of Adam Helfand's attendance.

**ANSWER NO. 8**

During the period referenced, the house parent position at JDA entailed no formal job description. Essentially, the house parent provided an adult presence in the event of an emergency situation at the school during the evening and overnight hours and on weekends.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 21st DAY OF June 2005.

Thomas Bratter
The John Dewey Academy

AS TO OBJECTIONS:

William A. Worth, BBO# 544086
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109-1024
(617) 456-8005

Dated: 6/22/05