DREW A. MORRIS v. BRANDEIS UNIVERSITY February 27, 2004
MASSACHUSETTS APPEALS COURT 128 DECISIONS

Docket No.: 01-P-1573
Date: February 27, 2004
Panel:
Case Name:      DREW A. MORRIS
    v.
    **BRANDEIS** UNIVERSITY

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

Drew A. Morris appeals from summary judgment entered in favor of the defendant, Brandeis University (Brandeis).

On May 7, 1997, Morris, a second-semester senior at Brandeis, submitted his final paper in a history course taught by associate professor Alice Kelikian. On May 12, 1997, Professor Kelikian submitted a student judicial system referral report to the office of campus life, charging Morris with verbatim plagiarism from four secondary sources on his final paper. II: 119 After notice to Morris, an investigation, and a hearing in accordance with procedures as set forth in Brandeis's student handbook (handbook), Brandeis's board on student conduct (board) unanimously found against him. Morris pursued an administrative appeal of the decision on the basis of "procedural irregularities and new evidence." On May 30, 1997, Morris was notified that Brandeis's appeals board on student conduct had denied his request for a new hearing. Morris then brought this action in Superior Court against Brandeis for breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation, and breach of fiduciary duty. A motion judge subsequently allowed Brandeis's motion for summary judgment, and Morris appealed. We affirm.

Discussion. 1. Breach of contract. In reviewing a student discipline case like this one involving an alleged contractual relationship, we consider whether the university violated any of the student's reasonable expectations created by one or more specific provisions of the contract, [1] Schaer v. Brandeis Univ., 432 Mass. 474, 478 (2000), and examine the record to ensure that the hearing was conducted with basic fairness. See Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 19-20 (1983); Schaer v. Brandeis Univ., supra at 481. Great deference is extended to

university decision-making on academic and disciplinary matters. See Schaer v. Brandeis Univ., supra at 482; Berkowitz v. President & Fellows of Harvard College, 58 Mass.App.Ct. 262, 269 (2003).

    a) Handbook provisions. Here, the only specific provisions of the contract allegedly violated by Brandeis were the ones pertaining to the student's right to an advisor of his choice. [2] Morris claims that Brandeis effectively denied him this right by "intimidating," "threatening," and scaring off three potential advisors who had originally agreed to help him. The judge ruled that this claim failed because Morris lacked admissible evidence to prove it. We agree. All of the out-of-court statements about which Morris sought to testify as a witness at trial were hearsay because offered for the truth of the matter asserted. None fell within any recognized exception to the hearsay rule, including the exception described in Ruszcyk v. Secretary of Pub. Safety, 401 Mass. 418, 420, 423 (1988).

    The judge properly excluded the out-of-court statements of the unnamed graduate student because the statements were unreliable. See Simmons v. Yurchak, 28 Mass.App.Ct. 371, 374-375 (1990). Brandeis should not be bound by the vicarious admission of a nameless agent who cannot be subjected to cross-examination. Moreover, the graduate student's statements to Morris about what one or more unidentified individuals allegedly told him constitute hearsay within hearsay. On appeal, Morris has not shown how each layer of hearsay was independently admissible. See Commonwealth v. McDonough, 400 Mass. 639, 643 & n. 8 (1987). The same may be said of the alleged statements to Morris by professors Antony Polonski and Paul Jankowski. Finally, Morris's averments in his affidavit characterizing Professor Polonsky's statements were properly excluded as conclusory and lacking in evidentiary foundation. [3] See Madsen v. Erwin, 395 Mass. 715, 721 (1985).

Page 2

    Also properly excluded on the basis of irrelevance were written statements of Professor Antony Polonsky. [4] See Liacos, Brodin & Avery, Massachusetts Evidence § 4.1.2 (7th ed.1999); Liarikos v. Mello, 418 Mass. 669, 672 (1994). Professor Polonsky's expressions of his subjective feelings were inadequate to show that an agent of Brandeis had threatened to take some sort of adverse action against him if he served as Morris's advisor at the hearing. See Mitchell v. TAC Technical Servs., Inc., 50 Mass.App.Ct. 90, 91 n. 3 (2000). [5]

(b) Basic fairness. After reviewing the record, we conclude that there was nothing fundamentally unfair about the process received by Morris. From the date of the charge through the appellate process, Brandeis adhered strictly to its procedural rules, see §§ 18-23 of the handbook, and Morris received more process than was required, in the form of a posthearing meeting with the dean of student affairs.

To the extent that Morris questions the fairness of the sanction, § 5 of the handbook expressly warns students that violation of university policies on academic honesty can lead to "serious penalties," including failure in the course and other sanctions. See § 5 of the handbook. The sanction in this case fell within the range of permissible actions allowed by the handbook. See § 21 of the handbook.

Morris's failure to acknowledge responsibility for his actions, and his blaming Brandeis for not teaching him appropriate methods of citation, was an invalid defense under § 5.4 of the handbook.

Finally, Morris has failed to place into legitimate dispute the fact that the sanction ultimately imposed upon him was consistent with those imposed upon other upperclass students under similar circumstances. II: 5, 139 There was no arbitrary, capricious or unfair conduct by Brandeis.

Nor is there any merit to Morris's specific objections to the process. First, to the extent that Morris now suggests that the hasty scheduling of the hearing four days after the charge was brought was unfair, we note that when the hearing was scheduled, graduation was two weeks away. At the time, Morris sought to resolve the issue of plagiarism, which had a potential impact on his ability to graduate, in a timely fashion. V: 504 There is no evidence that Morris, who hoped to participate in the senior week activities, either objected to the scheduling or asked for a continuance of the proceedings as permitted by §§ 20.2 and 20.17 of the handbook.

Morris next claims that Professor Kelikian and her teaching assistant unfairly highlighted and annotated copies of his paper for presentation to the board without providing him with a copy prior to the hearing. According to Morris, these color-coded copies, which lacked the cover page and bibliography from his original paper, gave a "false and misleading impression" of Morris's work as a whole.

No procedural rule required Professor Kelikian to provide Morris with the evidence she would be submitting to the board prior to the hearing. It was undisputed that Morris's original paper, including the cover page and the bibliography, was presented in its entirety to the board at the hearing. II: 3 The original source materials, portions of which Morris was

accused of passing off as his own work, were available to the board as well. Morris did not cross-examine Professor Kelikian at the hearing about the "misleading" evidence or bring the missing sections of his paper to the attention of the board.

Page 3

 Morris's footnotes, furthermore, were not simply misplaced on the wrong pages or in his bibliography. Our review of Morris's paper reveals several instances in which secondary sources were lifted without attribution by either quotation marks or footnotes anywhere in the paper. II: 46-87 Because Morris had no valid defense to the charges of academic dishonesty, Morris cannot be said to have suffered any prejudice from Professor Kelikian's "misleading" evidentiary submissions.
 To the extent that Morris claims that statements made by Lori Tenser, associate director of campus life, misled him about the role of the student advisor, we note that Morris admitted that around the same time that Tenser made these alleged misstatements, Tenser also told him to "make sure [he was] familiar with parts of Rights and Responsibilities." V: 427 Morris further admitted that he read the handbook before the hearing, though he claims that he was unable to fully comprehend the provisions. V: 426, 429. Sections 20.8, 20.9, and 20.11 of the handbook expressly set forth the full range of actions that may be taken by a student's advisor at a disciplinary hearing. Given the language of these provisions, Morris could not have reasonably expected that Tenser's oral representations--which plainly conflicted with these provisions of the contract--governed his rights at the hearing. In light of the overwhelming evidence of a fair process that was undertaken in connection with the charge of academic dishonesty against Morris, as well as the absence of evidence of bad faith or improper motive, no reasonable jury could find that Tenser's misstatements rose to the level of arbitrary and capricious conduct necessary to sustain a breach of contract claim. See Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. at 19-20; Pacella v. Tufts Univ. Sch. of Dental Med., 66 F.Supp.2d 234, 241-242 & n. 12 (D.Mass.1999).
 In sum, Morris has failed to adduce sufficient facts from which a jury could find that Brandeis violated his reasonable expectations or that Brandeis deprived Morris of basic fairness in the conduct of the disciplinary proceedings. Summary judgment, therefore, was properly granted in favor of Brandeis on the breach of contract claims. [6]

2. Breach of the implied covenant of good faith and fair dealing. No reference is made to this claim in Morris's statement of the issues presented for review. (Blue br. at pp. 1-2) The argument concerning Brandeis's alleged breach of the implied covenant is buried within Morris's analysis of his contract claims, and he fails to cite relevant case law in support of it. This peripheral treatment of the claim does not rise to the level of adequate appellate argument, and on that basis, the claim is deemed waived. See Eccleston v. Bankosky, 438 Mass. 428, 439 (2003); Ravnikar v. Bogojavlensky, 438 Mass. 627, 629 n. 2 (2003).

Were we to reach the merits, we would conclude that the judge properly allowed Brandeis's motion for summary judgment on the claim, which seems to have been based upon the same set of facts as the breach of contract claims. Assuming that a breach of covenant claim lies in this context, no reasonable jury could conclude on the record presented that Brandeis acted arbitrarily or in bad faith in this matter. See Mangla v. Brown Univ., 135 F.3d 80, 84 (1st Cir.1988).

Page 4

3. Negligent misrepresentation. Summary judgment was also properly granted on Morris's negligent misrepresentation claim, but for reasons other than those relied on by the motion judge. [7] As pressed on appeal, his claim was based upon the false statements by Tenser. [8] According to Morris, Tenser "grossly mischaracterized" the role of the advisor, erroneously informing Morris that the advisor could only provide "moral support." She also allegedly informed him that the advisor could not speak at the hearing or address the board. It was undisputed, however, that Tenser provided Morris contemporaneously with a copy of the handbook containing provisions that plainly conflicted with her oral statements. She also told him to familiarize himself with it. Although Morris claims that he was unable to comprehend fully the provisions, he admits that he read the handbook before the hearing. Under the circumstances, any reliance by Morris on Tenser's statements was unreasonable as matter of law. See Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 467-469 (2003); Collins v. Huculak, 57 Mass.App.Ct. 387, 392-394 & n. 7 (2003).

4. Breach of fiduciary duty. Pursuant to section 19.11 of the handbook, Tenser served as the board advisor during the judicial process. II: 110 Thus, under section 20.8 of the handbook, she was disqualified from serving as Morris's advisor. There was no fiduciary relationship between a student

and a university administrator/advisor like Tenser in these circumstances. See Sullivan v. Boston Architectural Center, Inc., 57 Mass.App.Ct. 771, 774 (2003) (generally, relationship between university and student is strictly contractual). Morris has failed to assert any particular facts in this case that would warrant the imposition of a heightened duty upon Brandeis. There was no error in the grant of summary judgment with respect to this claim.

Judgment affirmed.

[1] For purposes of the motion for summary judgment, Brandeis conceded that the relationship between its students and itself was contractual in nature. See Schaer v. Brandeis Univ., 432 Mass. 474, 478 (2000). Morris identified the handbook as the main source of the terms defining his contractual rights.

[2] Section 20 of the handbook sets forth the procedural standards in the student judicial process. Section 20.8 guarantees the accused student "the right to bring an advisor of his/her choice from the University community to assist in presenting the case before the Board or for advice during the hearing." (II: 111) Section 20.9 authorizes the advisor to present evidence and to introduce witnesses on behalf of the accused student. (II: 112) Section 20.11 permits the advisor to question all witnesses and to view and to question all evidence presented to the board at the hearing.

[3] Morris averred in his affidavit that Professor Polonsky told him "that he could not serve in such a capacity [an advisor] without having 'a major row with a colleague' and in fact had been intimidated into not acting in such a role." IV: 245 Morris further averred that Professor Polonsky told Morris that Professor Jankowski also could not serve as his advisor for much of the same reason. IV: 245

[4] At Morris' request, Professor Polonsky, the chairman of the Near Eastern and Judaic Studies Department at Brandeis, wrote a letter of recommendation in May, 1998, one year after the disciplinary proceedings at issue in this litigation. (VI: 701-702) According to Professor Polonsky, he wrote this letter on the condition that the letter would be strictly confidential and used solely in connection with Morris's application for law school (and not in any action against Brandeis). (V: 559-560) In that letter, Professor Polonsky stated that he believed the charge of plagiarism had been unjustified. He further explained that although he "felt this was a grave injustice ... as a newcomer to the United States and unwilling to involve [him]self in a major row with a colleague, [he] did not oppose the decision as vigorously as

[he] should have." (VI: 702)

[5] Morris takes issue with the judge's characterization of his testimony as "self-serving." In context, it appears that the motion judge's description was a reference to "conclusory statements [in the affidavit], offered without any evidentiary foundation or factual underpinning." Memorandum of Decision at 7. There was no error. See Madsen v. Irwin, 395 Mass. at 721.

[6] To the extent that Morris claims that certain promotional materials also formed the basis of a contract with Brandeis and that Brandeis breached its "generalized representations" to treat its students with "fairness and beneficence," any promises contained in these materials were too vague and indefinite to form an enforceable contract. Blue br. at 32-33. See Blair v. Cifrino, 355 Mass. 706, 710 (1969); Santoni v. Federal Deposit Ins. Corp., 677 F.2d 174, 179 (1st Cir.1982).

[7] Morris correctly points out that the judge misstated the elements of negligent misrepresentation, see Fox v. F & J Gattozzi Corp., 41 Mass.App.Ct. 581, 587 (1996), and the grant of summary judgment could not, therefore, have been based on the failure to produce evidence establishing Brandeis's intention to mislead.

[8] We reject his argument, made without citation to relevant authority, that statements in the handbook setting forth procedural guarantees were false or "became misrepresentations" when Brandeis declined to honor them in practice.