UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADAM HELFAND, CARON HELFAND, AND MITCHELL HELFAND,<br><br>Plaintiffs,<br><br>v.<br><br>THE JOHN DEWEY ACADEMY, INC., THOMAS BRATTER, CAROLE BRATTER, KEN STEINER, AND GWENDOLYN HAMPTON,<br><br>Defendants. | C.A. No. 04-11800-DPW |

**STATEMENT OF UNDISPUTED MATERIAL FACTS
PURSUANT TO LOCAL RULE 56.1**

Pursuant to Local Rule 56.1, defendants John Dewey Academy, Inc., Thomas Bratter, Carole Bratter and Ken Steiner (the "JDA Defendants") submit this statement of undisputed material facts in support of their motion for summary judgment.

1. Plaintiff Adam Helfand ("Helfand" or "Adam") was born on March 10, 1982 to plaintiffs Caron and Mitchell Helfand of North Brookfield, Illinois.  (Ex. 3, C. Helfand Dep. at 6-7).[1]

2. Throughout his adolescence, Helfand exhibited serious behavioral problems.

3. In junior high school, Helfand began smoking marijuana, and was caught shoplifting cigarettes and condoms from a drug store.  (Ex. 2, A. Helfand Dep. at 101, 474-75; Ex. 3, C. Helfand Dep. at 15).

---

[1] "Ex. __" refers to the exhibits attached to the Affidavit of Joseph D. Steinfield, filed herewith.

1

4.      During his junior high and high school years, Helfand's parents repeatedly bribed him to behave (Ex. 3, C. Helfand Dep. at 23-25, 29-30, 91-92).

5.      In high school, Adam began dealing drugs, destroyed property, assaulted a student, and stole a purse containing $140, using the money to buy drugs.  (Ex. 2, A. Helfand Dep. at 102, 109-111, 511, 529-530).

6.      Helfand's mother gave him a pager so that she could keep track of him (Id. at 42-43); Adam used the pager to help him sell drugs at and around his high school (Ex. 2, A. Helfand Dep. at 485; Ex. 3, C. Helfand Dep. at 42-43).  On occasion, Helfand's mother used to follow her son.  (Ex. 3, C. Helfand Dep. at 55).

7.      Adam stole money from his parents and from his friends' houses to buy drugs. (Ex. 3, C. Helfand Dep. at 54-55).  He "keyed" a car (his mother paid for the repairs) (Ex. 2, A. Helfand Dep. at 473-474; Ex. 3, C. Helfand Dep. at 16-17), regularly beat up students, (Ex. 2, A. Helfand Dep. at 110), and repeatedly broke the rules of his high school.  (Ex. 11, List of School Infractions).

8.      On June 4, 1999, Helfand was expelled from Glenbrook North High School in Northbrook, Illinois after drug paraphernalia and marijuana residue were found in his car.  (Ex. 3, C. Helfand Dep. at 84-85).

9.      On June 10, 1999, Adam Helfand enrolled at John Dewey Academy.  (Ex. 4, "Pre-Enrollment/Enrollment and Financial Agreement" ("Enrollment Agreement")).  On that date, Mitchell Helfand, on behalf of himself and Adam Helfand, signed a document entitled "RELEASE" that releases The John Dewey Academy from any claims arising out of Helfand's attendance at JDA.  (Ex. 5, Release).

10.     In relevant part, the Release states:

2

> In consideration of the student, Adam Helfand, being admitted to The John Dewey Academy (the 'Academy'), in Great Barrington, Massachusetts, the undersigned, the Parent and/or Guardian to the Student, hereby releases the Academy, and all its agents, officers, and employees, from any and all liability or responsibility for any and all injury or other causes of action of every nature arising out of the undersigned's attendance at the Academy, and from any and all injury of causes of action of every nature sustained or arising while the undersigned is on or about the premises.
>
> Further, the undersigned recognizes, understands and agrees that it is not possible to supervise the activities of the Student 24 hours a day and there may be times when the Student is therefore unsupervised or off campus without the knowledge of the Academy.
>
> \*   \*   \*
>
> It is expressly understood that without executing this Release, the Academy would not accept the Student into the programs, courses, sessions or seminars as the case may be, or if already accepted, the Student would not be continued in enrollment past the end of the current semester.
>
> It is understood that 'the undersigned in the singular as used throughout this RELEASE refers to all parties executing the RELEASE, whether singular or plural, masculine or feminine, and if minors are involved, the undersigned is signing in both his individual capacity and that of custodian and guardian of such minors.

(Ex. 5, Release).

11.  At the time he signed the Release, Mitchell Helfand read the document and knew that he was releasing JDA from any liability arising out of Adam Helfand's attendance. (Ex. 7, M. Helfand Dep. at 54-55.

12.  On June 10, 1999, Mitchell Helfand signed an Enrollment Agreement with JDA, which states: "I/We acknowledge that there is no twenty-four-hour, seven-day-a-week supervision at the school." (Ex. 4, Enrollment Agreement).

13.  Plaintiffs knew upon enrolling Adam Helfand at JDA that he would not be "under lock and key." (Ex. 7, M. Helfand Dep. at 40).

14.     Helfand began attending JDA in June 1999.  (Ex. 3, C. Helfand Dep. at 122).  Defendant Gwendolyn Hampton taught Spanish and supervised the school's kitchen.  (Ex. 1, G. Hampton Dep. at 74-75).

15.     In November 1999, the school assigned defendant Hampton as Helfand's "primary clinician."  (Amended Complaint ("Complaint"), ¶ 14).

16.     During the period from November of 2000 until Helfand graduated in the summer of 2001, he and Hampton repeatedly had sexual intercourse at her home in Great Barrington, Massachusetts.  (Ex. 2, A. Helfand Dep. at 327-328).  Neither Hampton nor Helfand told any students or staff at JDA about their relationship.  (Id. at 75, 185-86).

17.     Both Helfand and Hampton knew that severe punishment would occur if their affair were discovered.  (Ex. 1, G. Hampton Dep. at 596; Ex. 2, A. Helfand Dep. at 169-170).  Accordingly, they told no one about their relationship, and took measures to keep it secret.  (Ex. 2, A. Helfand Dep. at 75-77, 171-172, 185-186, 399-400).

18.     Helfand graduated from John Dewey Academy in August 2001 and enrolled at Manhattanville College in New York.  He and Hampton continued their relationship during his freshman and sophomore years at college, (Ex. 2, A. Helfand Dep. at 67), still concealing it from JDA and from Helfand's family.

19.     In September 2001, Helfand and Hampton conceived a child.  (Id. at 66).  In June 2002, the child, Vanessa, was born.  (Ex. 1, G. Hampton Dep. at 44-45).  Helfand and Hampton placed her with an adoption agency.  (Id. at 664-666).  Helfand resumed having sexual intercourse with Hampton shortly after the child was born.  (Ex. 2, A. Helfand Dep. at 202; Ex. 1, G. Hampton Dep. at 451-452).

20. In the Summer of 2002, Hampton became pregnant again. (Ex. 2, A. Helfand Dep. at 380-381). Helfand took her to a medical facility where she had an abortion. (Id.; Ex. 1, G. Hampton Dep. at 452). Hampton and Helfand continued to keep their relationship, and the pregnancies, secret. (Ex. 1, G. Hampton Dep. at 274-278; Ex. 2, A. Helfand Dep. at 185-186).

21. Helfand finished his freshman year of college in June of 2002. In July he went to California to visit his aunt, Holly Anderson, in California. (Ex. 6, H. Anderson Dep. at 29-30). During that visit he told his aunt about his relationship with Hampton and the birth of Vanessa. (Id. at 50-51). At Adam's request, she agreed to keep the matter secret. (Id. at 60-61).

22. In January 2003, Anderson called Caron and Mitchell Helfand on the telephone at their home in Illinois and told them of Helfand's relationship with Hampton and the birth of their child. (Ex. 3, C. Helfand Dep. at 137-138; 141-142; Ex. 6, H. Anderson Dep. at 72-77, 79-80).

23. Anderson did not tell Adam of her call, nor did his parents. (Ex. 6, H. Anderson Dep. at 74-75; Ex. 3, C. Helfand Dep. at 213). Adam and Hampton continued having sexual intercourse. (Ex. 1, G. Hampton Dep. at 691-692).

24. In March 2003 Caron and Mitchell Helfand took a trip to California. (Ex. 3, C. Helfand Dep. at 213). Adam joined them there, and the parents revealed that they knew of Adam's relationship with Hampton. (Ex. 7, M. Helfand Dep. at 95-96). Thereafter, the family agreed that Adam should cease all contact with Hampton, and he did. (Ex. 1, G. Hampton Dep. at 691-692; Ex. 8, E-mail).

25. On September 17, 2003, Hampton gave birth to Maya Fay Hampton Helfand. (Ex. 1, G. Hampton Dep. at 44). According to Hampton, Adam is the child's father. (Id. at 47).

26. At all times from 1999 to the present, Caron and Mitchell Helfand have resided in North Brookfield, Illinois. (Ex. 3, C. Helfand Dep. at 6).

27.     In 1993, defendant Thomas Bratter pleaded *nolo contendere* to a charge of "unlawful physical restraint" of a JDA student.  (Ex. 12, T. Bratter Dep. at 9).

28.     Mitchell Helfand has incurred no medical costs relating to this matter, (Ex. 7, M. Helfand Dep. at 35), and the extent of Caron Helfand's "treatment" was a conversation with her gynecologist, who prescribed a sedative (Ex. 3, C. Helfand Dep. at 47-48, 160-161).

        Respectfully submitted,

        JOHN DEWEY ACADEMY, THOMAS
        BRATTER CAROLE BRATTER, and
        KENNETH STEINER

        By their attorneys,

        /s/ Joseph D. Steinfield
        Joseph D. Steinfield, BBO #478680
        William A. Worth, BBO #544086
        Jeffrey J. Pyle, BBO #647438
        Prince, Lobel, Glovsky & Tye LLP
        100 Cambridge Street, Suite 2200
        Boston, MA 02114
        (617) 456-8000

I, Joseph D. Steinfield, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non registered participants on July 31, 2006.

        /s/ Joseph D. Steinfield